IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Civil Action No.:  2:19-cv-00799-DCN

| | |
|---|---|
| Michael Cassabon,<br><br>              v.<br><br>           Plaintiff,<br><br>The Bishop of Charleston, a Corporation Sole, and Robert E. Guglielmone, Bishop of Charleston,<br><br>           Defendants. | **DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS** |

Irrespective of Fr. Cassabon's arguments and twisting of the "facts," his claims still fail as a matter of law – the First Amendment precludes this Court from becoming entangled in an internal religious proceeding between a priest and his Bishop.  The very inquiry Fr. Cassabon seeks this Court to make – whether the Bishop's actions were reasonable or unreasonable; fair or unfair; warranted or not; retaliatory or canonically proper – are the very inquiries the Court is forbidden from making under well settled Supreme Court precedent.   Indeed, this Court has an independent structural duty under the First Amendment to reject Fr. Cassabon's bid to insert the federal judiciary into the Catholic Church's internal religious affairs.

**1.  CHURCH IMMUNITY / ECCLESIASTICAL ABSTENTION DOCTRINE PROTECTS THE FIRST AMENDMENT RIGHTS OF RELIGIOUS ORGANIZATIONS *AND* PROTECTS THE COURTS FROM BECOMING UNCONSTITUTIONALLY ENTANGLED IN RELIGIOUS DISPUTES.**

Ecclesiastical abstention or the church immunity doctrine serves as a structural barrier to courts exercising jurisdiction over essentially ecclesiastical claims.  It does not matter whether Fr. Cassabon pleaded jurisdiction based on diversity, federal question, or even admiralty

jurisdiction, the doors of the courthouse simply are not open to his dispute with his Bishop. At its very base, this case is only about a priest's dealings with his Bishop and his disappointment with how the Bishop responded to his religiously intrusive demands. Fr. Cassabon demanded that the Diocese allow him to remain on indefinite personal leave; that he be given a unilateral right to return to active ministry as a priest at a time of his choosing; that the Diocese pay him $1.3 million and provide free healthcare for life; and that future Bishops be inextricably bound to those terms.[1] With this suit, Fr. Cassabon is simply using the federal judiciary to coerce the Catholic Church into granting him lifetime autonomous priesthood, though he is unrepentant in engaging in apostasy and religious scandal.

Fr. Cassabon's claims will force the Court to become unconstitutionally entangled in such ecclesiastical matters as judicial evaluations of, for example:

- The adequacy of Bishop Guglielmone's accommodating Fr. Cassabon's multiple requests for psychological treatment and provision of support over ten years;

- The reasonableness of granting Fr. Cassabon's leaves of absence at his request;

- The Diocese's affording Fr. Cassabon several opportunities for advanced education;

- Fr. Cassabon's departure for Toronto for studies with the anticipation of laicization;

- Fr. Cassabon's Canadian civil union;

- Bishop Guglielmone's response to his priest's entering a civil union and the reasonableness of his hope for a solution to the situation;

- The Canon law issues raised by Fr. Cassabon's demand letter and whether Bishop Guglielmone's determinations of Canon law were correct;

- Fr. Cassabon's allegations about Bishop Robert Baker's dealings with and regarding then-Fr. Hayden Vaverek (now laicized) and his correspondence with the Papal Nuncio;

---

[1] *See Letter from Michael Cassabon to Bishop Guglielmone*, August 28, 2018 ***Exhibit A***.

- The Bishop's response to the Papal Nuncio's request for report and evaluation and the Canonical requirements on the Bishop;

- The Diocese's evaluation and rejection of Fr. Cassabon's demands.

The Free Exercise and Establishment clauses of the First Amendment to the Constitution prohibit any judicial interference, evaluation, or other entanglement into these ecclesiastical matters between a Bishop and a priest of the Diocese. For almost 150 years it has been settled that civil courts do not have authority to decide matters of church doctrine or governance, or to second-guess ecclesiastical decisions made by a churches.[2] *Serbian Eastern Orthodox Church* made crystal clear that civil courts cannot exercise jurisdiction over challenges to ecclesiastical decisions or the governance or administration of a hierarchical church.[3] All of the inquiries Fr. Cassabon's Complaint requires are simply forbidden.[4]

The Church must be free to pursue its own path without consideration of, or concession to, the views of government. That is very heart of the religious liberty guaranteed under the Establishment and Free Exercise Clauses – right, wrong, or indifferent, a church must be free to order its own religious structure without government interference or entanglement. It would be in flagrant violation of both the Establishment Claus and the Free Exercise Clause for a civil court to overturn a church's decision, and to set some new or different standard, or – as Fr.

---

[2] *Watson v. Jones*, 80 U.S. 679, 728-29 (1871) (emphasis added); *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church*, 344 U.S. 94, 117 (1952); *Byrd v. DeVeaux*, 2019 WL 1017602 at *7; *see also Tomic v. Catholic Diocese*, 442 F.3d at 1038. *See also Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc'y*, 719 F. App'x 926, 929 (11th Cir. 2018) (district court lacked jurisdiction to decide claims requiring an examination of doctrinal beliefs and church procedures).

[3] *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 713-714 (1976) *quoting Watson v. Jones*, 80 U.S. at 733-34.

[4] The District Court for the District of Columbia recently dismissed claims, including intentional infliction of emotional distress in *Ambellu v. Re'ese Adbarat Debre Selam Kilist Mariam, et al.*, 2019 WL 2365934.

Cassabon requests here – to permit claims to proceed that are entirely premised on penalizing internal church decisions.[5] Since James Madison declined to advise Bishop John Carroll of Baltimore on potential bishops in the Louisiana Territory, the government has stayed out of the business of dictating ecclesiastical appointments or determining what a church's proper policy ought be.  The same is true today and the ecclesiastical abstention doctrine mandates dismissal of this case for lack of subject matter jurisdiction under Rule 12(b)(1).

### 2.   UNDER *HOSANNA-TABOR* DISMISSAL UNDER RULE 12(B)(6) IS BOTH APPROPRIATE AND REQUIRED.

Contrary to Plaintiff's arguments, it is perfectly appropriate for the Court to dismiss a ministerial exception case at the motion to dismiss stage.  The applicability of the ministerial exception presents a pure question of law for the Court to decide.[6]  Courts have consistently recognized that the ministerial exception places an affirmative duty on civil courts to avoid entanglement in religious affairs, and thus that the ministerial exception question should be resolved at its earliest juncture.[7]  It is far better for both the courts and the religious organizations to operate free from the other within their respective spheres.[8]

---

[5] *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171 (2012).

[6] *Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 833 (6th Cir.  2015)(the applicability of the ministerial exception presents a "pure question of law.").

[7] *See, e.g., Lee v. Sixth Mount Zion Baptist Church*, 903 F.3d 113, 118 n.4 (3d Cir. 2018); *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036, 1042 (7th Cir. 2006), *abrogated in part by Hosanna-Tabor*, 565 U.S. 171 (2012); *Rayburn v. General Conference of Seventh-Day Adventists*, 772 F.2d 1164, 1171 (4th Cir. 1985) (Wilkinson, J.) (the ministerial exception is meant to avoid a "protracted legal process pitting church and state as adversaries" and makes church personnel and records "subject to subpoena, discovery, . . . [and] the full panoply of legal process designed to probe the mind of the church.").

[8] *McCollum v. Bd. of Ed.*, 333 U.S. 203, 212 (1948).

Courts around the country have dismissed ministerial exception cases on Rule 12(b)(6) motions.[9] Courts routinely recognize that religious organizations cannot be forced to accept ministers, nor can churches be punished on the basis of decisions on whom to retain as ministers.[10]  There is nothing in this case that warrants departure from the wall of separation between the state and the church.

Because Plaintiff's claims fall within the established "ministerial exception," he has failed to state a cause of action for which relief may be granted, and his claims must be dismissed pursuant to Rule 12(b)(6).

**TURNER, PADGET, GRAHAM & LANEY, P.A.**

s/Richard S. Dukes, Jr.
Richard S. Dukes, Jr.
40 Calhoun Street, Suite 200
Post Office Box 22129
Charleston, South Carolina 29413-2129
Telephone:  843-576-2810
Facsimile:   843-577-1646
Email: rdukes@turnerpadget.com

**ATTORNEYS FOR DEFENDANTS**

---

[9] *Demkovich v. St. Andrew the Apostle Parish,* 2017 WL 4339817 (N.D. Ill. Sept. 29, 2017). *Moreno v. Episcopal Diocese of Long Island*, 2016 WL 8711448 (E.D.N.Y. 2016) (granting a Rule 12(c) motion for judgment on the pleadings, analyzed as a motion to dismiss); *Penn v. New York Methodist Hosp.*, No. 11-CV-9137 NSR, 2013 WL 5477600, at *6 (S.D.N.Y. Sept. 30, 2013).

[10] In *Lee v. Sixth Mount Zion Baptist*, the trial judge raised the ministerial exception *sua sponte* and dismissed the case.